I respectfully dissent from the majority's resolution of this appeal.
The underlying action involved the shutting down of the defendant-appellee Beehive Tavern by the plaintiff-appellant City of Cleveland. The basis for the closure was that the bar constituted a public nuisance under R.C. 3767.01 et seq., in that there were complaints from community members of chronic drug sales, underage drinking, refuse in the parking lots, and weapons violations on the premises. These complaints were partially corroborated by two controlled drug sales (cocaine) by employees of the bar (not the owner) to confidential police informants over a period of several days. The owner, Floyd Whittington, denied any knowledge of his employees using or selling drugs.
The City points to a number of items seized when they raided the bar at 12:15 a.m., April 8, 2000, to justify the bar's closure, including the following: (1) gambling devices in the form of instant bingo slips [there was no evidence that the owner had any involvement with, or knowledge of, these items]; (2) four guns [one of which had the serial number filed off; the owner testified that the guns were in a locked room and that two of the guns, which were found in the parking lot or by the dumpster prior to his purchase of the bar, were left on the premises when he assumed ownership of the premises, and the other two weapons were the property of a former employee who had left his employment]; (3) material substance suspected of being used to cut/adulterate cocaine [the owner denied knowledge of it since he had recently purchased the bar]; (4) a spoon suspected to be used to cook cocaine [the owner denied knowledge of it since he had recently purchased the bar and because he does not use spoons in the operation of the bar]; and, (5) baggie ties commonly used for the sale of cocaine found in the basement office of the bar [the owner explained that baggies and baggie ties were in the office because he and his staff made and kept meat sandwiches in the office refrigerator]. The bar owner was found with a plastic ziploc baggie on his person (the owner explained that he picked this baggie off the floor when he saw it as a piece of trash while walking about the bar); the baggie tested positive for cocaine residue.
The trial court denied the City's request for an abatement order and for preliminary and permanent injunction against the bar. It is from this order that the City appeals. Two assignments of error are presented for review.
The first assignment of error provides:
 I AS A MATTER OF LAW, THE TRIAL COURT ERRED IN HOLDING THAT, PLAINTIFF MUST PROVE KNOWLEDGE, ACQUIESCENCE, AND PARTICIPATION, ON THE PART OF A COMMERCIAL PROPERTY OWNER, IN ORDER TO FIND THAT OWNER GUILTY OF THE CIVIL OFFENSE OF MAINTAINING A NUISANCE UNDER R.C. 3767.01.
The first assignment argues that the trial court applied the incorrect burden of proof with regard to the owner's knowledge and participation in the creation of the nuisance. In order to demonstrate the offense of maintaining a public nuisance under R.C. 3767, it need not be shown that the owner of the premises knew of, acquiesced in, or participated in the activities creating the nuisance. State ex rel. Pizza v. Rezcallah (1998), 84 Ohio St.3d 116, paragraph one of the syllabus. If a nuisance, as defined in R.C. 3767.02(A) is demonstrated, which is a very low threshold under that section, closure is mandated by R.C. 3767.06(A). However, the mandatory closure may be not be imposed and enforced against a property owner who lacks any culpability in the creation or perpetuation of a nuisance on the property. Rezcallah, at 132, citing Section 19, Article I of the Ohio Constitution.
The trial court based its denial of the mandatory closure of the premises on the City's failure to prove the owner's knowledge or participation in the creation of the nuisance, or perpetuation of the nuisance activities. The appellant-City argues that the trial court applied an improper burden of proof on the City when it stated in its order that, 3. A relator `must prove that the owner negligently or knowingly acquiesced or participated in the creation of a nuisance . . .'; the City seems to argue that the owner's knowledge and acquiescence is never material, overlooking the fact that Rezcallah provides for avoidance of the imposition of mandatory closure if an owner is not culpable in the creation of the nuisance and takes prompt action to abate or control the nuisance activities.
The evidence, particularly the testimony of the premises owner, supports the trial court's conclusion that mandatory closure should not be imposed due to the failure of the City to prove, by clear and convincing evidence, that the owner was culpable in the creation or perpetuation of the nuisance activities. Reading the owner's testimony, he outlines a number of steps he took to abate or control the nuisance activities once he purchased the bar in October of 1999, including: (1) hiring private security to guard the front and back entrance doors of the bar during operating hours and screen patrons for proper identification and stop any disturbances within the bar; (2) keeping the volume of the music within the bar at a level which would permit patrons to engage in conversation; (3) using four surveillance video cameras in each corner of the bar whose videotapes are reviewed by the owner for illegal or improper activity, and providing these tapes to the police and fire departments when those authorities need them; (4) providing bouncers, in addition to the security guards at the doors, to patrol the bar area to control fighting and disturbances by the patrons[1]; (5) clearing the parking lot at 2:30 a.m., after the bar closing, so that the fire department has clear access to adjoining properties; (6) using a video surveillance camera, with a feed to a closed circuit monitor inside the bar, to observe the parking lots during operating hours for disturbances and to alert the bar when the parking or patrons obstruct the adjoining alleyway; (7) the owner regularly cleans the exterior of the property and picks up trash, packaging, wrapping, and bottles, some of which were not from the owner's bar; (8) the owner regularly cleaned up the yard and driveway of the property which adjoined the bar, including plowing the driveway during the winter; (9) keeping clean the interior and exterior of the bar; (10) talking to the local police district commander to see if there was anything that the bar could do to make the premises safe or to not pose a problem with the police; (11) using the guards to break up overly large groups of patrons who may mill around the property; (12) having signage on the premises prohibiting the use of drugs, and removing any person who violates this prohibition; (13) not allowing patrons to sit in their cars, instead, these patrons would be asked to leave or come inside the bar so as to reduce outside congestion and better aid police surveillance and patrol of the area; (14) not permitting patrons to carry their drinks outside the bar.[2]
Further corroborating the testimony of the owner that there was no perpetuation of criminal activity or chronic drug activity at the bar by the owner, Cleveland Police Detective Dvorak testified that there was no pattern of criminal activity at the bar, just isolated instances of disorderly conduct or marijuana usage, which is common in bars around the city. Tr. 54-55.
The first assignment of error should be overruled.
The second assignment of error provides:
 II THE TRIAL COURT'S FINDING THAT APPELLANT HAD NOT PROVEN, BY CLEAR AND CONVINCING EVIDENCE, THE EXISTENCE OF A NUISANCE AT THE SUBJECT PREMISES IS AGAINST THE WEIGHT OF THE EVIDENCE.
The second assignment argues that the manifest weight of the evidence supports the finding of a nuisance by clear and convincing evidence. While the nuisance itself is proven since the owner had an interest in the premises which constituted the nuisance, see R.C. 3767.02(A), the City overlooks the lack of clear and convincing evidence tying the owner to the creation of the nuisance activities or lack of controlling the continued existence of the nuisance activities. The trial court is the judge of the credibility of the witnesses. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Where the trial court has some competent and credible evidence to support its conclusion, its decision will not be reversed as being against the manifest weight of the evidence. See C.E. Morris Co. V. Foley Constr. Co. (1978), 54 Ohio St.2d 279. In the present case, the trial court had competent and credible evidence which it could believe to demonstrate that the owner was not culpable in the creation or maintenance of the nuisance and, therefore, that mandatory closure was not warranted.
The second assignment of error should be overruled.
In summary, I would affirm the judgment of the trial court.
[1] The owner testified that, to his knowledge, he has never had to call for the police to quell a disturbance at the bar and no one has ever been arrested at the bar, for any reason. Tr. 73.
[2] It is somewhat ironic, and amusing, that many of these same sorts of objectionable activities (refuse, congestion, illicit sales, disorderly conduct) are present surrounding the major sports franchises in the City of Cleveland and these franchises use similar mitigation measures to control the development of nuisance activities at or near their events, events which are far larger in terms of patronage than the bar in question herein. Yet, there is no comparable action by the City to shutter those franchises' place of business as that employed against the Beehive Tavern.